**In re NEW ERA HOUSING CORPORATION.**

No. 25645.

District Court, D. New Jersey.

Feb. 7, 1940.

L. Stanley Ford, of Hackensack, N. J., and Morris M. Ravin, of Newark, N. J., per se.

Milton, McNulty & Augelli, of Jersey City, N. J., for respondent Ninth Federal Savings & Loan Ass'n of New York City.

FORMAN, District Judge.

At the time of the approval of the petition for reorganization February 19, 1937 of the above debtor, New Era Housing Corporation, there existed as material to the problem involved herein twenty mortgages on separate parcels of its realty in favor of the Ninth Federal Savings and Loan Association, hereinafter referred to as the "Association", which had been executed by the subsidiaries of the debtor, River View Lawns, Inc. or Saddle River Homesteads, Inc. New Era Housing Corporation conducted a realty development for residential purposes, and these mortgages covered parcels on which houses were in process of construction.

June 14, 1937 debtor filed its plan of reorganization which provided for the organization of a new company to which the debtor corporation and its two subsidiaries should convey their assets "* * * free and clear of all liens and encumbrances of every nature and description, with the exception of bona fide mortgages on the premises and such taxes as are due to the various municipalities and such liens as are placed or may be placed upon said properties by this plan of reorganization." Part II, § 1.

With reference to the creditors of the debtor the plan provided as follows: "The claims of said creditors shall be paid by the new company giving to each of said creditors a bond of the new company, payable five years from the date of the confirmation of said plan of reorganization, without interest. The bonds given to the creditors shall be secured by a mortgage in the principal amount of $100,000.00 covering all of the vacant real estate transferred by River View Lawns, Inc. to the new company, and by a mortgage in the principal amount of $25,000.00 covering all of the vacant real estate transferred by Saddle River Homesteads, Inc. to the new company." Part III, § 2.

Provision is made for release clauses to be contained in the mortgages, that is, releases of various lots shall be executed upon payment of specified sums of money. Following these provisions the plan provides:

"C. The said mortgages shall be executed and delivered to Trustees to be elected by the creditors and approved by the Court." Part III.

"D. The proceeds of said mortgages shall be used by said Trustees; first, to the payment of administration expenses as hereinafter provided; second, to the satisfaction of the bonds issued against said mortgages; and third, to the expense of the administration of said trust mortgages." Part III.

Part VII of the plan entitled "Allowances" reads as follows: "1. The administration expenses and allowances shall be a first lien on all of the property of the new corporation, prior to any mortgages given by the new corporation, but subject, however, to any bona fide mortgage now on the property of the New Era Housing Corporation, and its two subsidiaries, River View Lawns, Inc., and Saddle River Homesteads, Inc., and no payment shall be made to General Creditors until the administration expenses and allowances shall have been first paid in full; it being understood that administration expenses and

allowances for services rendered in the 77B proceedings shall be paid upon receipt of and out of the first moneys received from releases on account of the two mortgages above mentioned, provided, however, in the event the new corporation shall be in a position so to do the said payments shall be made sooner."

An amendment to the plan of reorganization was filed July 26, 1937. It provided in part as follows: "The debtor further undertakes to obtain a recasting of all the mortgages on houses held by the Ninth Federal Savings & Loan Association of New York City, which are at present the property of the said debtor or its subsidiaries and unsold, with a view to putting all the mortgages in good standing." Part VIII, § 2(g).

The plan as amended was confirmed by order of court dated August 9, 1937. The order contains a paragraph for allowances for services rendered by counsel and others which reads in part as follows: "* * * and the said allowances when made shall be a first lien upon all of the assets of the debtor corporation and of the new corporation to be paid as set forth in the order of the court."

The order granting the allowances was dated and filed August 23, 1937. Among other allowances fees of $4,000 each were granted to Morris M. Ravin, Esq., attorney for the trustees of the debtor, and L. Stanley Ford, Esq. attorney of the debtor, and the order contains the following, further, pertinent provisions:

"7. That the said allowances be a lien upon all the assets of the debtor corporation and its subsidiaries and of the new corporation formed to take over the assets of the debtor and its subsidiaries, and the said lien shall be subject only to bona fide mortgages existing on the assets of the debtor corporation and its subsidiaries at the time of the filing of the petition under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, in these proceedings, and that no disbursements whatsoever are to be made by the debtor corporation or the new corporation, with the exception of the payment of the disbursements and expenses permitted by the order of August 9, 1937, until the allowances above made are paid.

"8. That the said allowances shall constitute a debt of the new corporation as moneys are received by it from any source whatsoever, and it shall at all times be a priority debt of the said corporation, provided, however, that the new corporation may retain up to 50% of such moneys received by it (exclusive of moneys received under the release clauses in the trust mortgages mentioned in Part III of the plan of reorganization) for the payment of its legitimate running expenses, the balance to be distributed pro rata among those to whom allowances are made herein.

"9. That the said sums available for allowances shall be paid to Morris M. Ravin and by him distributed pro rata among those to whom allowances are made herein under paragraph 6 above, including himself, and the said Morris M. Ravin is hereby authorized, directed and empowered to execute such releases as may be necessary upon receipt of the said moneys for distribution, the said Morris M. Ravin being under no duty to determine the propriety of the expenditures made by the new corporation or the sufficiency of the amounts given to him for distribution, and he shall be held in no way responsible for the execution of any releases by him or any acts which he performs under this paragraph except that he shall be held accountable for the distribution of the moneys received by him pro rata as provided for herein."

"11. That Harry Ginsberg and Morris M. Ravin be and they hereby are designated as trustees to receive the trust mortgages mentioned in Part III of the plan of reorganization filed and approved herein, and that they function as such trustees as provided in the said trust mortgages and in the said plan of reorganization."

Pursuant to the plan a new corporation known as the Twin-Boro Holdings, Inc., was formed, and to it was transferred the property covered by the twenty mortgages, to which deed was attached a complete copy of an order of this court including the provision that administration creditors should be secured by a lien against the debtor. To enable the new corporation to receive unadvanced moneys on the original mortgages from the mortgagee, it executed in favor of the "Association" new mortgages in like tenor as the original twenty mortgages pursuant to the amendment of the plan of July 26, 1937 supra.

Lastly, on March 19, 1938 Twin-Boro Holdings Co., Inc. conveyed the twenty properties to Jeffy Holding Co., Inc., a subsidiary of the "Association." Simultaneously, junior encumbrancers, consisting

of second and third mortgagees, released their liens upon these properties to the Jeffy Holding Co., Inc., and the mortgages given by Twin-Boro Holdings Co., Inc. were cancelled.

The original mortgages of the Saddle River Homesteads, Inc., and River View Lawns, Inc., had never been cancelled although no reason for their existence is apparent after the execution and filing of the "recast" mortgages. Between March and November 1938 the Jeffy Holding Co., Inc., completed the construction of these houses and sold fifteen of the twenty properties to individual customers. The "Association" cancelled the original mortgages executed by Saddle River Homestead, Inc., and River View Lawns, Inc., and Jeffy Holding Co., Inc. took from each of its fifteen customers a purchase money mortgage. The amounts of these mortgages included therein as much of the amount as remained due on the original mortgages (principal and accrued interest) plus whatever had been paid for taxes, improvements and other expenses on the properties, to as great an extent as was permitted by the terms of the sale. Every mortgage but one was in an amount larger than the principal sum of the original mortgage, but in lesser amount than the principal, accrued interest, taxes and expense of completion of construction, etc. The remaining five properties were conveyed on or about December 31, 1938 from Jeffy Holding Co., Inc., to the "Association" "to comply with an order of the Federal Government that all federal savings and loan associations carry real estate upon which they hold mortgages in their own names instead of in the names of subsidiary corporations".

Petitioners, Morris M. Ravin, Esq., attorney for the trustees of the debtor, and L. Stanley Ford, Esq., attorney for the debtor, in behalf of themselves and others similarly situated who might join with them, allege that their allowances are secured by a lien upon the assets of the debtor which lien is subordinate only to liens against the debtor existing at the time of the filing of the petition for reorganization, and that the mortgages now held by the "Association" were not in existence at that time. Hence, they demand priority over the security held by the "Association".

Pursuant to this petition this court has issued an order to show cause in the following terms: "The Ninth Federal Savings and Loan Association of New York City show cause before this court why a writ of sequestration should not issue herein to sequester the mortgages held by the said Ninth Federal Savings and Loan Association of New York City on any real estate formerly belonging to the debtor corporation or its subsidiaries or the Twin-Boro Holdings, Inc., why a sequestrator or receiver should not be appointed to take possession of the said mortgages and collect the interest and principal payments being made thereon by the mortgagors and hold the same for the satisfaction of the liens due to the said L. Stanley Ford and Morris M. Ravin and others similarly situated, why a writ of execution should not be issued to the Marshal of this district directing him to sell the buildings and land upon which they are situated as more particularly described in the schedules annexed to the petition filed herein, and why such other and further relief as this court would deem just and proper, should not be granted."

From a practical standpoint when Twin-Boro Holdings Co., Inc., on March 19, 1938 agreed to give title to Jeffy Holding Co., Inc., the reorganization had come to a complete collapse, and when consideration is given to junior encumbrancers mentioned in the agreement to sell, taxes, interest, and the incompleted character of the buildings, the inevitable conclusion must be that there was no equity left in the twenty properties in the Twin-Boro Holdings Co., Inc., at the time it made these conveyances. Furthermore, it is apparent that the plan looked to property of the reorganized corporation other than these twenty parcels to produce income to free the claims made on this application. The court is likewise led to the belief that all equities in such other property as the reorganized corporation held have been exhausted by mortgagees existing at the time of reorganization.

Under the plan of reorganization these claimants were to be paid out of funds which would come into the hands of the Twin-Boro Holdings Co., Inc., as a result of its reorganized condition. It anticipated a reconstructed entity that would sell parcels of land owned by it. Upon these funds the plan contemplated that there would be impressed a lien of such a nature that the costs, expenses and allowances of the administration of the reorganized proceedings would be paid. The plan never materialized to such a point that a single

sale was made resulting in income to the reorganized corporation that would permit of the attachment of the lien. The plan collapsed and with it the hope for payment for the services of these claimants and others who were allowed fees or reimbursement collapsed as well, because it now appears that no funds became available upon which these allowances could fasten themselves.

The "Association" stood by during the pendency of the reorganization proceedings in this court content with the lien of its twenty mortgages. It cooperated in the recasting of the twenty mortgages in an effort to make the plan of reorganization effective. I am convinced that all of the interested parties to this reorganization plan, principals, attorneys, agents, etc., were fully aware by March 19, 1938 that the plan of reorganization was unworkable and at least knew that Twin-Boro Holdings Company, Inc., was conveying the twenty properties to the "Association" or its dummy, Jeffy Holding Co., Inc.

It will be observed that Mr. Kaufman, president of the debtor and a trustee under a voting trust devised in the plan of reorganization, executed the deed of March 19, 1938 to Jeffy Holding Co., Inc., as president of Twin-Boro Holdings Co., Inc. Mr. Ford, attorney of the debtor, although denying his presence at this transfer, knew that it was being made. Mr. Ravin was continued in association with the reorganized company as one of the trustees to administer other securities under the plan and to collect and distribute the fees and allowances authorized by the order. He must have known of the collapse and surrender by Twin-Boro Holdings Co., Inc., to Jeffy Holding Co., Inc., that the deed of March 19, 1938 implied. No murmur of complaint being made by the petitioners for months after this event had occurred, I am of the opinion that the "Association" had the right to assume that liens or equities in favor of petitioners, if any, had been abandoned and that it would not be looked to for administration expenses, the payment of which had been provided for in accordance with specific directions contained in the order of this court. Indeed, the most that can be charged against the "Association" is that it did not institute formal foreclosure proceedings to eradicate even the color of such liens, but I am convinced that the giving of the deed and subsequent long silence upon the part of the petitioners gave the "Association" the right

to assume that it was not expected to do more than it did.

The petition is dismissed and the order to show cause is discharged.